## LUPTON *v.* McDONALD

[No. 214, September Term, 1965.]

*Decided March 1, 1966.*

The cause was submitted to HAMMOND, HORNEY, OPPEN-HEIMER and McWILLIAMS, JJ., and RAINE, J., Associate Judge of the Third Judicial Circuit, specially assigned.

Submitted on brief by *Ernest V. Wachs* for the appellant.

Submitted on brief by *John S. Hollyday* and *Bruce C. Light-ner* for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This case under the Workmen's Compensation Act turns on the question of whether the appellant, Thomas W. Lupton

(Lupton) was a casual employee. Lupton was seriously injured on February 12, 1964 while working for Carl A. Milburn (Milburn) who was under contract to cut trees for the appellee, Clifton J. McDonald (McDonald). Lupton filed a claim with the Workmen's Compensation Commission against McDonald claiming that McDonald was his employer within the meaning of the Act. After a hearing, the Commission found that Lupton was not an employee of McDonald and denied the claim. Lupton appealed to the Circuit Court for Washington County. The appeal was determined on the record of the proceedings before the Commission and Judge Rutledge affirmed the Commission's decision on the ground that Lupton was a casual employee at the time of the accident.

In this appeal, Lupton contends that he was not a casual employee and that Milburn was a subcontractor of McDonald which gives Lupton the right to recover from McDonald, the principal contractor. McDonald contends that Milburn was an independent contractor and not a subcontractor; that Lupton was a casual employee within the meaning of the Act; and that he, McDonald, is exempted from the provisions of the Act under Code. (1964 Repl. Vol.) Article 101, Section 67(3) because he had workmen's compensation insurance in West Virginia which covers his employees while in Maryland so that Lupton's sole remedy is under the West Virginia law. Milburn is not a party to the litigation; it appears from Judge Rutledge's opinion that he had no workmen's compensation insurance.

The material facts are not in dispute. McDonald, with an office in West Virginia, conducted a tri-state logging and sawmill business. His operations took him into Maryland and Virginia as well as West Virginia. He had a contract to cut timber on a tract of land containing about thirty-five trees near Emmittsburg, Maryland. Since the early part of January, 1964, he also had a contract with Milburn wherein Milburn agreed to cut timber for McDonald at $5 per thousand feet. Milburn's sole obligation under the agreement was to cut the trees to the ground and top them; McDonald's men would then drag them to the hauling trucks.

In January, 1964, Milburn began to perform his contract alone, then he hired Jimmy Marx, a logger, who worked for

him about two weeks at $10 or $11 a day. Marx then left Milburn's employment. Milburn called Lupton, also a logger, "to help clean up this one particular place." Milburn stated before the Commission that he did not know whether Lupton would have worked for him the day following Lupton's accident since there were no plans, nor were there arrangements as to pay, although he gave Lupton $30 after the accident. Milburn testified that "we would have finished out that tract the day that we went over there because there was only seven trees there."

Lupton testified that he was called by Milburn to help him cut timber, that there was no agreement as to pay and that he drove his own truck to the job in Maryland from his home in Virginia. He also stated that he was hired only "to help finish the job" on that particular tract of land, that "there was possibly a day's work up in there where we was at in the stand, I mean to finish this," and that he had never worked for Milburn before. Lupton had no dealings with McDonald in connection with the job. Lupton was injured when a limb of a tree that Milburn was cutting struck Lupton's leg and knocked him over a hill.

In *Clayburn v. Soueid, Inc.*, 239 Md. 331, 211 A. 2d 728 (1965), which also involved the question of whether a claimant under the Act was a casual employee, we reviewed the prior decisions of this Court on the subject. We said:

> "This Court has had a number of cases before it involving the question of whether or not the particular employment involved was casual. We have pointed out that the Workmen's Compensation Act does not define the term 'casual' as therein used to describe one of the classes of employees to whom the Act is not intended to apply [Code, 1957, Art. 101, § 67(3)], and that, in the absence of a statutory definition, the application of the term should be made in each case according to the particular facts presented. *Hygeia Ice & Coal Co. v. Schaeffer*, 152 Md. 231, 238, 136 Atl. 548 (1927); *State Accident Fund v. Jacobs*, 134 Md. 133, 134, 106 Atl. 255 (1919). 'Casual', as used in the Act, 'is a word of indefinitely varied import.'

*Moore v. Clarke,* 171 Md. 39, 52-53, 187 Atl. 887 (1936).

"Nevertheless, criteria have been developed, in our Court and in other jurisdictions which have similar statutes, to which we have given weight in determining whether an employment is casual or regular. These criteria include the nature of the work, the duration of the employment, and whether it is occasional, incidental, or a usual concomitant of the employer's business. *Moore v. Clarke, supra,* at 53 and authorities therein cited.

"Where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue as to the relation that existed between the parties is a mixed question of law and fact, to be determined by the trier of the facts, under proper instructions, *Hygeia Ice & Coal Co. v. Schaeffer, supra,* but where the essential terms and manner of employment are undisputed, the question is one of law for the Court."

In this case, the essential terms and manner of employment are undisputed. We agree with Judge Rutledge that, as a matter of law, Lupton was a casual employee. The nature of the work was temporary, the duration of the employment was only for a day, and it was occasional and incidental.

In *Clayburn,* the employment was held not to be casual; the employment, while necessarily intermittent because of its nature, had been for about four months; there was no limitation as to its duration. The employer had told the employee he would give him a steady job, had raised his pay after a few days of work, and had called for him, by arrangement, to take him to the place where his duties were to be performed. In *State Accident Fund v. Jacobs,* 134 Md. 133, 106 Atl. 255 (1919), another case in which the employment was held not casual, the injured man had been employed to do hauling for a factory whenever he was needed for that purpose under a continuing engagement for an entire season.

The present case presents a converse factual situation to *Clayburn* and *Jacobs.* It is far closer to *East v. Skelly,* 207 Md.

537, 114 A. 2d 822 (1955), *Moore v. Clarke,* 171 Md. 39, 187 Atl. 887 (1936), and *Marvil v. Elliott,* 164 Md. 659, 165 Atl. 822 (1933), in each of which the employee was engaged to perform a single service on a particular occasion only. In each case, we held, as a matter of law, that the employment was casual. In *Moore,* we said the employment "was single, isolated, complete in itself, was connected with no past or future employment, and when it was finished all contractual relations between the employer and the employee ceased." 171 Md. at 54. In *Marvil,* we pointed out that the brief service the employee was undertaking for the contractor "had no relation to any engagement between them in the past or future." 164 Md. at 665. In the factual situation here presented, *East, Moore* and *Marvil* are controlling.

Lupton contends that, as stated in *Jacobs,* whether the employment was casual must be determined with reference to the scope and purpose of the hiring rather than with sole regard to the duration and regularity of the service. But the scope and purpose of Lupton's hiring by Milburn was only to complete the work which Lupton's predecessor had left unfinished; the hiring was confined to completing a specific job on a particular piece of land which might "possibly" take a day. Lupton also refers to the definition of casual employment given in 1 Larson, *Workmen's Compensation,* § 51.00 (1965), that "Employment is casual when it is irregular, unpredictable, sporadic and brief in nature." Here, the employment was not only irregular but for a single occasion; Milburn had never employed Lupton before and had no plans to engage him for the future. It was unpredictable and sporadic, in that Lupton was only hired because Marx, who had originally been engaged by Milburn to do the work, had left the job. The hiring was clearly brief in nature.

*Chamberlain v. Central Vermont Ry. Co.,* 100 Vt. 284, 290-91, 137 Atl. 326 (1927), is closely in point on the facts involved. That case was an appeal from the action of the Vermont commissioner of industries under the Workmen's Compensation Act of that State who issued an award in favor of a claimant injured while sawing wood. The evidence was undisputed. The claimant, a farmer, had been working on his farm

for twelve weeks prior to his injury. One Hurlburt had a contract with the railway company to saw a number of cords of wood and put it aboard the train. Hurlburt came to the claimant and asked him to help him and Hurlburt agreed to pay him $4 a day. On the second day of working, the claimant lost two fingers while sawing wood. The court set aside the award of the commissioner. It held that it was clear the employment of the claimant was purely casual at the time of his injury and that he was not an employee within the meaning of the Vermont Workmen's Compensation Act. In delivering the opinion of the court, Chief Justice Watson said: "There was nothing before the commissioner how long the sawing job was likely to last, nor that claimant was employed to work for any definite time, or until it was finished." Chief Justice Watson quoted with approval a statement from *Consumers' Mutual Oil Producing Co. v. Industrial Comm'n.,* 289 Ill. 423, 124 N. E. 608 (1919), that "* * * 'where the employment for one job cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual.' "

As Lupton was a casual employee, it is immaterial whether Milburn, for whom he was working, was an independent contractor or a subcontractor of McDonald; in either case, in view of our finding as to the nature of the employment, the Act does not apply. Nor do we reach the question raised by McDonald as to whether, if Lupton was his employee, and if his employment had not been casual, McDonald would be exempt from the provisions of the Act because of his insurance in the State of West Virginia.

*Judgment affirmed; costs to be paid*
*by appellant.*